(C.D. 2988)

STUART IMPORTS, LTD. v. UNITED STATES

United States Customs Court, First Division

(Decided May 3, 1967)

*Glad & Tuttle* (*George R. Tuttle* of counsel) for the plaintiff.
*Barefoot Sanders*, Assistant Attorney General (*Glenn E. Harris* and *Alfred A. Taylor, Jr.*, trial attorneys), for the defendant.

Before OLIVER, WATSON, and RAO, Judges

OLIVER, Judge: The merchandise under protest, described on the invoice as ice decanters and imported full of Chianti wine, was classified by the collector of customs at the port of San Francisco under paragraph 218(f) of the Tariff Act of 1930, as modified by T.D. 51802, as blown glass household articles, dutiable at the rate of 50 per centum ad valorem. Plaintiff's sole claim is that the decanters are properly dutiable at only 25½ per centum ad valorem under the same paragraph, as modified by T.D. 54108, as articles known as bubble glass.

As originally enacted, paragraph 218(f) made no specific reference to either household or bubble glass articles. The provision for household articles was carved out as an exception to rate reductions prescribed by the Japanese Protocol to the General Agreement on Tariffs and Trade, T.D. 53865, supplemented by T.D. 53877. A separate provision for articles "commercially known as bubble glass, if produced otherwise than by automatic machine," resulted from a Mexican trade agreement modifying paragraph 218(f) (T.D. 50797) and was carried over into the General Agreement on Tariffs and Trade and all subsequent modifications.

The officials papers were received in evidence, government counsel noting its objection to the receipt of customs Form 4371 on the ground that it is hearsay information. These papers reveal the following somewhat puzzling course of events: Entry of this merchandise was made on March 6, 1961; an examination by Examiner Ewen on

March 7, 1961, advisorily classifying the decanters as unusual containers and, on a partially torn segment of the invoice, writing in red ink "Blownglass H/H art P. 218"; a Notice of Increase in Duties sent to the importer from the appraiser of merchandise, San Francisco, dated March 8, 1962, signed by Examiner J. L. Brown and reading "Ice Decanters, Unusual Containers, as bubble glass Par. 218: 25½%"; liquidation of the merchandise as household articles at 50 per centum ad valorem on July 26, 1962; protest filed August 15, 1962, claiming classification as bubble glass; request from collector to appraiser, dated August 29, 1962 (Form 4371) addressed to Mr. Ewen and asking if advisory classification is adhered to; answer received on Form 4371, signed by J. L. Brown of the appraiser's office, dated September 25, 1962, stating that "Ice decanters are classifiable as bubble glass, not cut or engraved, under par. 218(f) at 25½%"; collector's report (Form 4297), dated February 1, 1963, stating that the ice decanters were classified under paragraph 218(f) at 25½ per centum and that the classification is affirmed upon review based on the appraiser's advisory classification.

A partner in the importing firm, Stephen E. Stuart, identified plaintiff's exhibit 1 as representative of the merchandise he has been importing for years.

Mr. William H. Ewen, also called by the plaintiff, testified that he had been a line examiner in the United States Appraiser's Office in San Francisco for at least 10 years. He was shown the entry paper involved in this protest and identified his initials appearing thereon in red ink. He was also shown the Memorandum to Accompany Invoice (Form 4317) and stated that, while it was directed to him, he never received it. He stated that a Mr. Brown was handling the liquor imports at that time, and he in no way conferred with, or advised, him with respect to this line of merchandise.

Referring to plaintiff's exhibit 1, he testified that he had seen similar pieces which he had classified as bubble glass containers. However, the record contains the following sequence of exchanges:

JUDGE WILSON: And that container there is bubble glass in your opinion?

THE WITNESS: It's pretty difficult to tell when it is filled, your Honor.

MR. TUTTLE: We will empty the contents.

JUDGE WILSON: You may have a lot of volunteers to help you with it.

THE WITNESS: If I may say, when a question as to the article is bubble glass or not comes up, I consult the examiner who is qualified on the bubble glass.

JUDGE WILSON: Who is that?

THE WITNESS: Mr. Simpson, Terrence L. Simpson.

\*　　\*　　\*　　\*　　\*　　\*　　\*

Q. What are you looking for on that, Mr. Ewen?—A. Looking to see if I can determine which way the glass is made.

JUDGE WILSON: How do you determine whether it is bubble glass or not? What do you look for?

THE WITNESS: As a very crude examination, I would see if there were bubbles in the glass. At this point, I cannot determine, and as I said before, if there were a question I would submit it to the glass examiner who is competent to handle that.

\*　　\*　　\*　　\*　　\*　　\*　　\*

Q. Mr. Ewen, are you able to see in the light there or would you prefer to go over to the light, Mr. Ewen?—A. To be frank, your Honor, if I were to have to classify this I would ask the glass examiner first.

On cross-examination, Ewen admitted that he knew nothing about either the manufacturing process involved in making bubble glass or the quality of materials used. He again testified that, where the classification was questionable, as here, he would abide by the decision of the glass examiner.

Plaintiff contends that the testimony given by Examiner Ewen, plus "the concession of the collector," establishes a *prima facie* case that the merchandise is in fact bubble glass. It is also argued that the appraiser's answer to protest, together with Ewen's testimony, is likewise sufficient to make out a *prima facie* showing on the issue of bubble glass.

Defendant argues that the collector has made no concession in this case and that as classifying officer his determination supersedes any advisory classifications; that the information on customs Form 4371 should be disregarded as hearsay; and that the testimony of Examiner Ewen is insufficient to establish that the imported merchandise is dutiable as claimed.

It is clear from even a cursory examination of the witness', Ewen's, testimony that he was extremely reluctant to take a stand on the identification of plaintiff's exhibit 1. What is more, his frank revelation of relative unfamiliarity with this line of merchandise, together with the admission that on this question he would abide by the decision of the glass examiner "who is competent to handle that," renders his testimony of little or no value on the issue presented. Therefore, if plaintiff's claim is to succeed, it will depend upon the matter contained in the official papers connected with this entry.

The theory that the collector has "conceded" on the protest, although not further elaborated upon in counsel's brief, must refer to the Report

of Collector on Protest (Form 4297), dated February 1, 1963, and transmitted to the court with the protest in this case. The protest was filed August 15, 1962, and section 515 of the Tariff Act of 1930 (19 U.S.C., sec. 1515) authorizes the collector a 90-day review period to affirm, modify, or change his original decision on liquidation. The report came 5½ months after liquidation and is clearly untimely.

With respect to untimely reports, this court and the court of appeals have ruled that the collector loses his jurisdiction over the subject matter upon the expiration of this statutory review period and that such jurisdiction immediately vests in the court. *United States* v. *Straus & Sons et al.*, 5 Ct. Cust. Appls. 147, T.D. 34193; *Bertrand Freres, Inc., et al.* v. *United States*, 47 Cust. Ct. 155, C.D. 2296. It has been observed, with reference to this divestment of jurisdiction, that:

* * * the collector had no jurisdiction over the protest, or its subject matter, as would permit him to take any action at the request of the parties or otherwise which would in any way affect the validity or existence of the protest or alter the circumstances of the subject matter. * * * [*Calif-Asia Rattan Company* v. *United States*, 35 Cust. Ct. 154, C.D. 1737.]

In *Mid State Sales Co.* v. *United States*, 21 Cust. Ct. 209, Abstract 52579, where the collector had transmitted protests to the court after the 90-day review period with memoranda conceding plaintiff's claim, we held that such action had no affect on the outcome of the case since "he [the collector] has lost the authority to reliquidate and is no longer a party to these suits and cannot, therefore, make an admission against the interests of the United States which will bind this court."

A collector's untimely reply, therefore, is not to be considered a "concession." While, peculiarly enough, the collector's report in this case indicates a mistaken notion as to the liquidation rendered, the statement therein admitting plaintiff's claim cannot legally affect the action actually taken by him when he possessed jurisdiction to classify the merchandise.

Plaintiff's reliance on the appraiser's report on protest Memorandum to Accompany Invoice, customs Form 4371) is not objectionable *per se.* When timely filed, i.e., within the authorized review time allowed the collector, such a report is properly received in evidence as a source of information. *M. Pressner & Co.* v. *United States*, 26 CCPA 186, C.A.D. 16; *United States* v. *Geo. S. Bush & Co., Inc., et al.*, 35 CCPA 124, C.A.D. 381; *Albert F. Maurer Co.* v. *United States*, 43 CCPA 90, C.A.D. 613. Indeed, as the court of appeals pointed out in the *Pressner* case, *supra*, the appraiser's timely report on protest is part of the record and need not be offered separately into evidence. The appraiser's report referred to by both the trial and appellate

courts in the *Albert Maurer* case, *supra*, appeared on the same customs Form 4371 as used by the appraiser in this case. It is the form specifically required by the Customs Manual, section 17.3(c), dealing with the collectors' review on protest. Since it was filed with the collector on September 25, 1962, well within the 90-day review period, it is timely, properly in evidence, and presumptively correct. Defendant's position that the report should be disregarded as hearsay is unsupported by any cited authority and appears to be wholly without merit.

However, it is just as well settled that the appraiser's report may not be resorted to for the purpose of rebutting the presumption of correctness attaching to the collector's classification. *United States* v. *Gandolfi & Co.*, 12 Ct. Cust. Appls. 455, T.D. 40615; *Doap Leun Hong Co.* v. *United States*, 19 CCPA 313, T.D. 45481; *M. Pressner & Co.* v. *United States*, *supra*. The collector, as final arbiter on the question of classification at the administrative level, may reject, in whole or in part, the appraiser's description and classification of merchandise. In other words, to the extent that the appraiser's report conflicts with the collector's classification it will be considered to have been rejected.

In the instant case, the appraiser's report states that the merchandise is bubble glass dutiable under paragraph 218(f) at 25½ per centum ad valorem. This appears to have been disregarded by a classification of the same merchandise as blown glass household articles dutiable at 50 per centum ad valorem under a separate carved-out provision appearing in the same paragraph. Of course bubble glass may well be a blown glass article (cf. *Edward P. Paul & Co., Inc.* v. *United States*, 53 Cust. Ct. 92, C.D. 2478), but, to be dutiable at 25½ per centum ad valorem in paragraph 218(f), it must be shown to have been produced otherwise than by automatic machine. Thus, whether the appraiser's report is viewed as wholly or partially in conflict with the collector's classification, it certainly cannot be used to prove the applicability of the claimed 25½ per centum ad valorem rate of duty.

While it seems unfortunate that the importer should fail in light of the circumstances surrounding the liquidation of this entry, the outcome must follow the uniform application of recognized evidentiary rules. As the appellate tribunal observed long ago in somewhat kindred circumstances:

Principles of law and established legal rules of procedure cannot lightly be set aside to serve the convenience of one party to the prejudice of another. [*United States* v. *Gandolfi & Co.*, *supra*.]

In any event, it remained the plaintiff's option to introduce sufficient independent proof to negate the presumption attending the classification of this merchandise. Not having done this and finding no competent evidence from the official papers to rebut that presumption, the

protest in this case is hereby overruled and judgment will issue accordingly.