(C. D. 1786)

Mine Safety Appliances Company *v.* United States

United States Customs Court, Third Division

(Decided May 24, 1956)

*Jerome G. Clifford* for the plaintiff.

*George Cochran Doub*, Assistant Attorney General (*Chauncey E. Wilowski, Richard H. Welsh*, and *Murray Sklaroff*, trial attorneys), for the defendant.

Before EKWALL and JOHNSON, Judges

JOHNSON, Judge: The merchandise involved in this case consists of mine safety lamps and batteries, imported from Canada on or about February 28, 1951. The lamps were assessed with duty at 22½ per centum ad valorem under paragraph 397 of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, T. D. 51802, as articles composed of metal, and the batteries at 20 per centum ad valorem under paragraph 320 of said tariff act, as modified, *supra*, as electric storage batteries. It is claimed that the merchandise is entitled to free entry under paragraph 1615 of said tariff act, as amended by the Customs Administrative Act of 1938, as American goods returned.

Said paragraph 1615, as amended, provides:

(a) Articles, the growth, produce, or manufacture of the United States, when returned after having been exported, without having been advanced in value or improved in condition by any process of manufacture or other means. [Free.]

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

(e) The foregoing provisions of this paragraph shall not apply to—

(1) Any article upon which an allowance of drawback has been made under section 313 of this Act or a corresponding provision of a prior tariff act, unless such article is in use at the time of importation as the usual container or covering of merchandise not subject to an ad-valorem rate of duty;

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

(h) The allowance of total or partial exemption from duty under any provision of this paragraph shall be subject to such regulations as to proof of identity and compliance with the conditions of this paragraph as the Secretary of the Treasury may prescribe.

The Customs Regulations of 1943, as amended, in effect at the time of this importation, provided:

**10.1 Requirements on entry.**—(a) Except as otherwise provided for in this section or in section 10.2, the following documents shall be filed in connection with the entry of articles claimed to be free of duty under paragraph 1615, Tariff Act of 1930, as amended:

(1) A declaration of the foreign shipper on consular Form 129 (Invoice of Returned American Goods and Declaration of Foreign Exporter) certified by the

American consular officer, if the value exceeds $100. An invoice on consular Form 138 shall not be required if consular Form 129 is filed within the period provided for in these regulations.

(2) An affidavit of the owner, importer, consignee, or agent on customs Form 3311.

(3) A certificate, customs Form 4467, of the collector of customs at the port from which the merchandise was exported from the United States. Such certificate shall show whether drawback was claimed or paid on the merchandise covered by the certificate and, if any was paid, the amount thereof. This certificate shall be issued on application of the importer, or of the collector at the importer's request, and shall be mailed by the issuing officer directly to the port at which it is to be used. If the merchandise has been exported from the port at which entry is made and the fact of exportation appears on the records of the customhouse, the fact of reimportation shall be noted on such export record but the filing of the certificate on Form 4467 shall not be required.

\*        \*        \*        \*        \*        \*        \*

10.2  **Waiver of evidence.**—(a) The collector may waive record evidence of exportation and the declaration of the foreign shipper on consular Form 129 provided for in section 10.1 (a) (1) if he is satisfied by the production of other evidence as to the existence of all the facts upon which the entry of the merchandise under paragraph 1615, Tariff Act of 1930, as amended, is dependent. \* \* \*

In the instant case, it appears that the declaration of the foreign shipper and the importer's affidavit were filed with the collector (plaintiff's exhibits 2 and 3). However, no certificate of exportation was filed nor did the collector waive its production, but stated in his report that no evidence had been presented to substantiate the claim that the merchandise was of domestic origin.

At the trial, a sample of the merchandise was received in evidence as plaintiff's collective exhibit 4. It consists of a lamp attached to a battery by means of a long cord. There appears on the lamp the words, "EDISON CAP LAMP MADE BY THOMAS A. EDISON, INC.    WEST ORANGE, N. J.  UNITED STATES OF AMERICA." On one side of the battery are the words, "EDISON MODEL P CAP LAMP    MADE BY THOMAS A. EDISON, INCORPORATED    WEST ORANGE, N. J.  U. S. A." On the front of the battery is a plate containing the words, "THOMAS A. EDISON OF CANADA LIMITED MONTREAL, P. Q.  FOR USE ONLY IN CANADA AND NEWFOUNDLAND." Bert F. Taylor, an employee of the plaintiff company, testified that this plate had been placed on the battery by Thomas A. Edison of West Orange, N. J., in order to keep track of the number of lamps going to Canada and for identification purposes, and that the name of the manufacturer was on the side of the exhibit.

This witness stated that he had been employed by the plaintiff for 12 years but had not been in the export department at the time of the exportation of this merchandise. He did not know of his own knowledge whether this particular lamp (plaintiff's collective exhibit 4) had

been exported, but he stated that all miners' cap lamps were manufactured by Thomas Edison and distributed by Mine Safety of Pittsburgh. He produced from the files of the plaintiff several unsigned shipper's export declarations, which were received in evidence and marked plaintiff's collective exhibit 1. They purport to show shipments in 1943 through the port of Buffalo from Mine Safety Appliances Co. of Pittsburgh to Mine Safety Appliances Co. of Canada, Ltd., of Toronto, of various items, including Edison mine lamps and parts and Edison mine lamp cells. The witness stated that his firm ships miners' cap lamps into Canada through other ports but that he understood this particular exportation went through Buffalo.

At a subsequent hearing, he testified that he had examined the company's files to verify the port of exportation, but could find no bill of lading or other documents to do so. He stated that this merchandise was shipped to Toronto and that, according to other papers on file, merchandise going to Toronto cleared through Buffalo. However, the records he examined went back only 5 years, whereas this shipment had been made more than 10 years previously.

William J. Twiggers, the customs broker who filed the entry herein, testified that the merchandise was imported through the port of Buffalo, and, that since the name of Buffalo appeared in the shipper's export declaration, he believed that the merchandise had been exported through that port. He said he had requested a certificate of exportation from that port, but had not been able to obtain it. He explained that, when the application was returned, a note from the collector was attached, stating that the exportation could not be certified, because the records were no longer available. The collector did not indicate in any way that the merchandise had gone through Buffalo, and the witness did not know of his own knowledge that it had.

James J. Martin, liquidating officer in the office of the collector at Pittsburgh, testified that he was not familiar with Government rules with respect to destruction of records, but that records are retained at least 5 years. He did not know whether that was true of certificates of exportation.

The question before the court is whether this merchandise is entitled to free entry as American goods returned under paragraph 1615, as amended, *supra*. In order to recover, plaintiff must establish that the merchandise was, in fact, American goods returned and that the applicable regulations have been complied with or compliance waived or impossible. *Maple Leaf Petroleum, Ltd.* v. *United States*, 25 C. C. P. A. (Customs) 5, T. D. 48976; *Balfour, Guthrie & Co., Limited* v. *United States*, 26 Cust. Ct. 223, C. D. 1327; *Thornley & Pitt a/c*

*Earl Investment Corpn.* v. *United States,* 33 Cust. Ct. 136, C. D. 1645; *United States* v. *Coastwise Steamship & Barge Co.,* 9 Ct. Cust. Appls. 216, T. D. 38047; *Close & Stewart* v. *United States,* 11 Cust. Ct. 14, C. D. 784. Where the evidence does not establish that the merchandise was imported through the port of exportation, the filing of a certificate of exportation is mandatory. *V. A. Lessor & Co.* v. *United States,* 29 Cust. Ct. 258, C. D. 1479. However, where it is impossible to furnish the documents required by the regulations, the facts may be established by satisfactory evidence other than that prescribed by the Secretary of the Treasury. *United States* v. *Coastwise Steamship & Barge Co., supra.* These facts include not only the positive identification of the merchandise as having been previously exported American goods, but also whether or not they were excluded from the provisions of paragraph 1615, *supra,* because of the fact that, even though of American manufacture, they consisted of goods upon which an allowance of drawback had been made. *Madeline Britton et al.* v. *United States,* 29 Cust. Ct. 314, C. D. 1485.

In the instant case, all that was offered in lieu of the certificate of exportation was the unsigned shipper's declarations (plaintiff's collective exhibit 1) and the statements of the witnesses that they believed the merchandise must have been exported through the port of Buffalo, although they had no personal knowledge to that effect. There is no evidence establishing that the merchandise actually was exported through Buffalo, nor can the items involved herein be identified with those listed on the shipper's export declarations. Furthermore, no evidence has been presented to show whether or not any drawback was allowed on this merchandise.

The mere fact that the records at Buffalo may have been destroyed, making it impossible to obtain a certificate of exportation, does not, of itself, sanction the free entry of so-called American goods without the production of other satisfactory evidence as to the identity thereof. *Richard Ullrich* v. *United States,* 67 Treas. Dec. 959, T. D. 47759; *Madeline Britton et al.* v. *United States, supra.*

On the record before us, it appears that the regulations have not been complied with nor has compliance been waived by the collector. Furthermore, the evidence does not positively identify the imported merchandise with any previous exportation of such goods nor has it been established that no drawback was paid or claimed. We are constrained, therefore, to overrule the protest. Judgment will be rendered accordingly.