(C. D. 1969)

DULIEN STEEL PRODUCTS, INC., OF CALIF. W. J. BYRNES & Co., INC. } *v.* UNITED STATES

United States Customs Court, Third Division

(Decided February 18, 1958)

*Lawrence & Tuttle* (*George R. Tuttle, Sr., Charles F. Lawrence, and Frank L. Lawrence* of counsel) for the plaintiffs.

*George Cochran Doub,* Assistant Attorney General (*Mollie Strum, Joseph E. Weil,* and *William J. Vitale,* trial attorneys), for the defendant.

Before JOHNSON, DONLON, and RICHARDSON, Judges

JOHNSON, Judge: This case is before us on rehearing, after having been restored to the docket by order of the court. *Dulien Steel Products, Inc., of Calif. and W. J. Byrnes & Co., Inc.* v. *United States,* 34 Cust. Ct. 418, Abstract 59188.

The protest, as limited at the trial, covers two crawler cranes, identified on the invoices as NDB–NC–4 and SN–2–17, shipped from Saipan and claimed to be free of duty under paragraph 1615 of the Tariff Act of 1930, as amended by the Customs Administrative Act of 1938, as American goods returned.

It appears from the record originally presented that the merchandise was of American manufacture and that it was returned in a rusty, decrepit condition, with parts missing. It was stipulated that it was war surplus material used in the Pacific by the Armed Services.

Under paragraph 1615, as amended, merchandise of American manufacture, returned after having been exported, without having been advanced in value or improved in condition, is entitled to free entry, provided the regulations prescribed by the Secretary of the Treasury have been complied with. The applicable regulations governing this entry (Customs Regulations of 1943, as amended, sections 10.1 and 10.2) require the filing, in connection with the entry,

of a declaration of the foreign shipper on consular Form 129, an affidavit of the owner, importer, consignee, or agent on customs Form 3311, and a certificate of exportation on customs Form 4467, which certificate shall show whether drawback was claimed or paid. The regulations also provide that the collector may waive record evidence of exportation and the filing of customs Form 129, if he is satisfied by the production of other evidence as to the existence of all the facts upon which the entry of merchandise under paragraph 1615 is dependent. It is well settled that free entry under this paragraph is a privilege and that all requirements of the regulations must be met, unless compliance is waived by the collector or is impossible. *Maple Leaf Petroleum, Ltd.* v. *United States*, 25 C. C. P. A. (Customs) 5, T. D. 48976; *Mine Safety Appliances Company* v. *United States*, 36 Cust. Ct. 277, C. D. 1786, and cases cited.

In the instant case, only customs Form 3311 was filed. A bond was given for the production of consular Form 129, but it was not produced, although the bond was canceled; nor was customs Form 4467 filed. It was stipulated that no drawback was paid or claimed on the merchandise.

Plaintiffs claimed, when the case was first before us, that the production of customs Form 4467 was impossible, on the ground that no export declarations were required of military and naval supplies and equipment for use of the Armed Forces abroad. (15 C. F. R. § 30.46, June 21, 1940, and supplementary orders.) We did not sustain that contention because the record presented did not establish that the merchandise was exported when this regulation was in operation. The only evidence on that point was the testimony of one witness that, as to 70 per centum of the goods on the entry (which included many different items), various manufacturers had filed affidavits stating that the merchandise had been shipped out around 1941 to 1944 through the Armed Forces.

We also found that it was not clear from the statements of counsel at the trial whether or not production of the required documents had been waived by the collector. We, therefore, restored the case to the docket, stating:

We note, however, that in the collector's memorandum in connection with the protest, the basis of affirmation of his decision is given as "Section 10.1 (3) Customs Regulations of 1943 & TD 51802—Certificates of Exportation (CF 4467) not produced." On the other hand, there is a stamped notation on the entry next to a group of three items, including the two here involved, stating:

Regulation evidence of exportation waived.

No drawback Sec. 10.2 (a) C. R. 1943.

[Sgd.] John C. Townsend,
Deputy Collector of Customs.

These statements have not been offered in evidence and are noted because they indicate inconsistent positions taken by the collector. It may be, therefore, that

the production of the required documents was waived or intended to be waived by the collector.

When the case was heard thereafter, John C. Townsend was called as a witness for the plaintiffs. He testified that the importer did not file consular Form 129 or customs Form 4467 in connection with the entry and that he (the witness) did not on behalf of the collector waive production of either of these documents prior to liquidation. He also stated that where such documents are produced within 60 days after liquidation, the collector may reliquidate. According to the witness, a letter was received from the Bureau of Customs, dated June 9, 1950, stating that Universal Machine Corp. did not have a rate of drawback established, and another letter was received at some time from the Bureau or the manufacturer, stating that Allis Chalmers Co. did not obtain any drawback. (According to a prior witness, the crane marked NDB–NC–4 was manufactured by the Universal Unit Machinery Co. of Milwaukee, Wis., and that marked SN–2–17 was manufactured by the Allis-Chalmers Manufacturing Co., also of Milwaukee.) The witness referred to a statement on the invoice by the examiner "See free entry 02380 of February 23, '49" and said that he had been unable to locate the papers in that entry.

At a later hearing, counsel for the plaintiffs offered in evidence the consumption entry on which there was stamped next to a group of three items, including the two here involved, the statement of waiver quoted in our order. Alongside the item SN–69–56 in said group, the word "affidavit" is written in red ink. That item was liquidated free of duty. Counsel for the Government contended at the hearing that Mr. Townsend's stamp was applicable only to that item. However, Mr. Townsend was by then retired from Government service and was not recalled as a witness.

When this case was originally submitted, the record was unclear as to whether or not the collector had waived production of the documents required by the regulations. The additional evidence presented does not establish that there was such a waiver. Mr. Townsend testified definitely that there was no waiver before liquidation. He said he had at some time received letters from the Bureau to the effect that no drawback had been claimed or paid and pointed out that the collector may reliquidate, if documents are received within 60 days after liquidation. There was no reliquidation in the instant case, and Mr. Townsend did not state that the collector waived production of the required documents. He was not questioned as to the meaning of the stamped notation of waiver on the entry, to which the court particularly referred in its order. In fact, the entry was not offered in evidence until a later hearing at which Mr. Townsend was not present. Under such circumstances, it cannot be held that the

stamped notation is sufficient evidence to establish a waiver by the collector.

Plaintiffs argue, as they did previously, that production of customs Form 4467 was impossible, because no export declarations were required for the shipment of military supplies for the Armed Forces. However, the record does not establish when this merchandise was exported. Without such proof, it cannot be determined whether the regulations relied upon by plaintiffs were in operation at the time and were applicable to the merchandise, and failure to file a certificate cannot be excused on the ground of impossibility. *Thornley & Pitt a/c Earl Investment Corpn.* v. *United States*, 33 Cust. Ct. 136, C. D. 1645. Since cranes are not necessarily or solely military equipment, those involved herein may not have been exported by or for the Armed Forces, even though they were subsequently used by them. The evidence presented does not identify this merchandise with material shipped abroad by the Armed Forces during World War II. *Cf. Double Bend Mfg. Co.* v. *United States*, 39 Cust. Ct. 174, C. D. 1922.

Furthermore, no satisfactory explanation has been offered for the failure to file consular Form 129. The mere fact that a bond given for its production was canceled is not evidence of a waiver by the collector.

Plaintiffs, in their brief, contend for the first time that this merchandise is not subject to duty on the ground that outward shipment of American goods for use of the Armed Forces in wartime does not constitute an exportation and that their return to the United States is not a dutiable reimportation. Whether or not this claim is meritorious, it is not now before us, since it was not made in the protest. *Lloyd's Subagent* v. *United States*, 19 C. C. P. A. (Customs) 408, T. D. 45576. We note, however, that, according to the record, the Central Bank of China obtained all the equipment on various islands in the Pacific, including Saipan, as war reparations, moved some to China, and sold the remainder to surplus dealers in this country. At the time this merchandise was purchased by the importer and shipped from Saipan, it had entered the commerce of a foreign country and had become an exportation, even if not originally such. *United States* v. *Coastwise Steamship & Barge Co.*, 9 Ct. Cust. Appls. 216, T. D. 38047.

For the reasons stated, the protest is overruled, and judgment will be rendered for the defendant.